Good morning, Your Honors. Charles Fleischman, appearing for the appellant. Good morning. I wanted to discuss initially the standard of review. Well, I have a question right out the gate. Are you familiar with the Abatey case? Very. All right. What does that matter in your case? Yes. It matters with regard to the standard of review, because I think — Obviously, you didn't challenge that below. I mean, you were looking — your challenge below was to whether the plan granted discretion, right? Yes. All right. So why does Abatey affect yours? Abatey says at one point that if the plan administrator or the claims administrator has discretion to interpret the contract, the terms of the plan, and has the authority to make a final determination of the benefits, which it seems in this case is true with MetLife, then it has full discretion. So most of my arguments on that issue seem to have fallen away. There's just one issue, though, that Abatey does says. It says, with regard to the standard of review, it says, by giving the plan administrator full and final authority, investing such authority exclusively in the administrator, this policy clearly gave to the plan administrator the power to decide according to its own judgment. And the key word is exclusively. While you can argue that MetLife has discretion, it's not — or seems to have discretion because of its grant of the right to interpret or the discretion to interpret, and it makes the final decisions, it is not — does not have exclusive right to make the final decisions. And so Abatey really doesn't say that MetLife has discretionary authority in this case to make factual determinations. In this case, the plan says that the plan administrator, which is the employer, and other plan fiduciaries, plural, have full discretion. And it's because this indicates that MetLife does not have exclusive discretion to make factual determinations. So I would say that, although Abatey seems on the one hand to argue against my position, in the end it comes down and says MetLife doesn't have this full discretion to make factual determinations in this case. Counsel, I have a question for you, please. Assuming that we were to disagree with that argument and to conclude that this plan does give discretion to the plan administrator, would we still be required to remand to the district court for further proceedings consistent with Abatey? Because the abuse of discretion standard was one thing under Atwood, and as I read the record, it looked to me like Appellant didn't even try to satisfy Atwood, just argued there was no discretion. But Abatey ends up saying, if there is discretion, but a fiduciary with some conflict of interest, that in assessing abuse of discretion, that has to be taken into account, the interest of the fiduciary. So in other words, would we remand or would we affirm if we conclude that MetLife had discretion? Before I address that, can I reserve about seven minutes for my rebuttal? In answer to that, Your Honor. Maybe. Huh? Maybe. Maybe. In answer to that, Your Honor, the plaintiff in this case did not argue that there was a conflict of interest that should change the standard of review under Atwood from abuse of discretion to de novo, but the plaintiff did argue that assuming that there is an abuse of discretion standard of review, MetLife abused its discretion, and it abused its discretion for several reasons. One is there was not substantial evidence to support the decision, and that's because the doctor, Lieberman, the rheumatologist, wrote that most people with fibromyalgia can do a job, a sedentary job, and therefore the plaintiff can, and we know from Weaver v. American Home, and we know from Hawkins v. First Union, and from several other cases, the mere fact that most people can do the job, or most people with the plaintiff's illness with fibromyalgia can do a sedentary job is the worst evidence that the plaintiff can do a sedentary job. Also, it was arbitrary and capricious, regardless of the conflict of interest. The decision was arbitrary and capricious because the doctor wrote that she could do a sedentary job, and he never said that she could do her specific job. And we know from several cases also, Sabatini from Northern California, that I cite in my brief, or Sabatino, that the mere fact that you can do a sedentary job doesn't mean that you can do that specific job that the plaintiff talks about. Her test for disability in this case was plaintiff's ability to perform her regular occupation, her own occupation. And there never was any evidence to make that finding. And a second reason why it was arbitrary and capricious was because the defendant met life, refused to consider plaintiff's evidence that she submitted after they made their final decision, but before the filing of the complaint. And she, when she filed her notice of appeal, she told them that she was going to see her doctors and get some more material. And they waited, I think, 27 days or at the most 30 days from the time they sent her the denial until they made a decision. They knew that she was going to see her doctor. They didn't wait. They didn't bother to contact her and say, hey, we're waiting. What about it? Are you going to send us more material? And when she did send the additional material, they never even considered it. Third reason why it was arbitrary and capricious, regardless of conflict of interest, is because on the appeal, the administrative appeal, they never had a different rheumatologist look at the administrative record or the medical records to make a decision. It was reviewed by a nurse. And the regulations specifically say that the review has to be, when there's a medical question involved, has to be conducted by a qualified health care professional. And the qualified health care professional, with regard to fibromyalgia, is a rheumatologist. She was entitled to a fresh, new look at that decision by a qualified professional in the field involved. And the fourth reason why it was an abuse of discretion, regardless of conflict of interest, is the defendant complained that the plaintiff did not undergo mental testing, and they did not tell her about this mental testing until we got into court in the district court. This was never in any letter. It was never that it was sent to her that she should undergo any type of mental testing. None of the rheumatologists said that she should undergo mental. Even the defendant's rheumatologist did not say she should undergo that mental testing. And it was just purely an argument made by the defense attorney at the time of the hearing or at the time of the filing of the briefs in the lower court. And if that was the basis for denying it because she didn't go through mental testing, then that was an abuse of discretion because they never told her about it. And that's the Booten decision in this circuit. You rely on the exclusive discretion language in Abbeyty. You require on the you rely on the exclusive language in Abbeyty. That was your first point. My first point, you mean on the standard of review? Yeah. My standard of review was yes, yes. Okay. Now, on the question of exclusive jurisdiction, was anybody besides MetLife involved in the decisions in this case? No. Okay. But MetLife was not. I'm aware of the policy language. Okay. But in terms of the people actually dealing with this case, MetLife was it. Yes. Made all the decisions. Okay. As far as remaining. I'm still I still have a question related to the question I asked earlier, which is, okay. So you have a lot of arguments that say without regard to conflict of interest, there was an abuse of discretion, which you've made. But the district court said there was no abuse of discretion, but the district court was not following the Abbeyty standard, correct? Right. That was because it was pre-Abbeyty. Yes. So I guess I'm still wondering if we were to conclude that there was discretion here and that the district court had to review for abuse of discretion, doesn't the record show that MetLife was the pocketbook that would pay the claim as well as administering it? So wouldn't it be proper to let the district court consider your arguments in the light of the Abbeyty standard? Okay. We don't know what the district court would do with that, right? Right. We don't know, but we don't have to know. We can look at the evidence and we can determine or you can determine whether or not there was an abuse of discretion, regardless of there being a conflict of interest. But assuming that you don't buy my arguments about there being a conflict of interest, regardless of conflict, I'm sorry, about an abuse of discretion, regardless of conflict of interest, you can look at, you have all the evidence in front of you right here in the excerpts of record that we both filed, and you have all the evidence that was in front of the district court and all the evidence that was in front of MetLife at the time they made the decision. And so you can make that determination right now. There are cases, Bootin, for example, decided that there was a, the administrator had messed up and not sought additional evidence and not done a proper investigation, and it did not remand the matter back to the district court to make further proceedings. It decided right there based on the facts in front of it. And the same thing happened in, well, in Snow the court said that if there's an abuse of discretion, we don't have to send it back, you don't have to send it back to the district court to reexamine it. The, if the decision is not supported by substantial evidence, the plaintiff should get the benefits without a remand. Now, in Abatey, it was sent back to the court to be, to the district court for reexamination, because they came up with a reason, the administrator came up with a reason that was never told to the plaintiff before the final denial. It was told at the time of the final denial without a chance to administratively appeal that additional reason. And so it was sent back to the district court for the plaintiff to be able to put in new evidence regarding that final reason. In Ingram v. Martin Murrieta, it was remanded, after the court determined that the standard of review should be for de novo and not abuse of discretion, the matter was not decided by this court but sent back to the trial court because the plaintiff in that case told this court that there was additional evidence that he wanted to submit to the district court. So that's why it was sent back. But you can make the decision based upon the evidence that is in front of you right now without having to send it back to the district court. And what you have under the Abadie analysis in this case is you've got two procedural violations. One of them is no qualified health care professional did the administrative review, and you've got the Booten administrative regulation. You're at seven minutes left. Okay. You've got the Booten mistake in that they didn't tell the plaintiff about additional testing that could have supported her claim. On conflict of interest, you have the same doctor doing the medical review in this case, Lieberman, as did it in Jordan. So you've got what is talked about in the Black and Decker case about the usual medical insurance hacks who do these reviews. There's evidence of that. You've got a refusal on the part of MetLife to wait for new evidence from the plaintiff when they knew that she was looking for new evidence because it was in her appeal, and you've got a refusal to consider her new evidence when she submitted it. You've got a failure to credit the plaintiff's credible evidence from three doctors saying that she was totally disabled. And you've got the application of the wrong test for disability. MetLife said, well, as long as she can do sedentary work, that means she can do her own occupation, and that wasn't the test. Do you want to reserve that, and we'll focus Apelli's argument, and then you'll have an  Do you want to do that? Yes, thank you. Thank you. Good morning, Your Honors. Eric McDonough for Epicentric. Why don't you start out with how Abeyte affects your argument? Well, what I'll do is, if it pleases the Court, I think I'll just oppose some of the The first issue he brought up, which Justice Nelson, I think, ably refuted, was the concept that MetLife is not the exclusive decider. It does not have exclusive discretion to make determinations in this case. No one else was involved in any level in making decisions in this case. MetLife accepted the paperwork. MetLife addressed the claims. MetLife initially approved the claim. MetLife denied the claim. MetLife then upheld its claim on appeal. At no point in time was anyone other than MetLife involved at any level in this case. So MetLife does have exclusive discretion. Opposing counsel addressed, I think, four main points as to how Abeyte would affect this case, and I think they're ably and easily refuted, each and every one of them. First of all, there was no effort in the district court to satisfy Atwood, as Judge Gould ably noted. I would, because we have not had an opportunity to brief Abeyte to this Court, I would cite to the Court a compelling decision from the district court in Arizona. It's Wallace v. Intel, Slip Opinion, 2006, Westlaw, 207-9839, District Court of Arizona, where the Court stated all of the factors discussed in Abeyte were at least as relevant then, prior to this Court's decision in Abeyte, as they are now. Indeed, given plaintiff's heavier burden under Atwood's all-or-nothing approach, there would have been greater need for robust discovery into the conflict issue at that time. And in that case, the Court determined that the plaintiff was not entitled to a so-called second bite at the apple.  So is it essentially your position they never raised the conflict issue below? That's correct. And so, and whether there has been Abeyte, and Abeyte may have changed the standard of review, that issue just wasn't before the Court, wasn't an issue that appellant was raising, and so we shouldn't, you know, we don't need to remand to deal with that issue because it wasn't an issue. It was not an issue. It was not addressed to the Court, and as the Court in the Wallace decision down in Arizona concluded, that if plaintiff wanted to raise that issue in the district court, it had that right to do so, and it had every opportunity to do so consistent with Atwood. Plaintiff's counsel in this case is able. Plaintiff's counsel has handled these cases for years and years. Current, he understands what the law is. If they chose not to raise it at the district court, they don't now get a chance to do so because there's a new decision. Well, so, for example, let's just say if that issue existed and the Court had dealt with it based on Atwood, then clearly Abeyte coming out would be a reason to remand and say, you know, consider your decision in view of Abeyte if it had been raised below. Well, and here you're saying it wasn't raised at all. It never was an issue, so why are we making an issue now? I am saying that. I think logically I don't think it flows. I think that in the abstract, perhaps if it was raised below and Abeyte came down later, perhaps it could have been sent back to the district court. In this instance ---- Well, I mean, generally speaking, if a court deals with an issue and they applied the wrong standard of review, then sometimes two people do get another bite at the apple, you know, if it turns out that a decision at the court says this is the standard of review. No question, Your Honor. In other cases, we have subsequent to Abeyte, we've briefed to the Ninth Circuit some of these issues, and we've taken the position, and I'm not arguing other cases here, I don't want to be misconstrued on that, we've certainly taken the position just because Abeyte has come out post-Atwood does not automatically mean that things should be sent down, because there are compelling factors in each independent case as to what that district court did prior to Abeyte. A lot of courts have satisfied the now-Abeyte standard, if you will, even before Abeyte came out. For example, allowing discovery, allowing discovery into conflict issues, addressing each and every conflict issue, seeing if any of those alleged conflicts would in any way affect the standard of review. Those courts have ---- All right. But here, our facts here is you're saying the conflict issue was one counsel could have raised, did not raise, and so ---- I am firmly stating that. We don't need to deal with it at Abeyte, regardless of Abeyte, it just wasn't an issue before the Court, so ---- That's exactly what I'm saying. All right. And I want to be firm on that. That is what I'm saying. That's our position. Even if the Court were to somehow disagree with that, some of the factors that opposing counsel has raised as to why this case should be returned to the district court ---- Well, I think he says we don't need to. I understood him to say you can decide it all right here. Well, at a basic level, the parties have not in any way, shape, or form been asked to address or brief those issues other than coming in here today. And I think this is an excellent forum for discussing these issues, but I would think at a minimum the parties should be able to submit some semblance of briefing as to why that would be the case, not coming to the Court cold, although I'll make my best arguments, and I believe they're correct and compelling. I think that that certainly would be a forum to address Abatey, not simply to come in here today and kind of argue some of the issues that he has. Counsel, it seems to me that, although I don't know if the panel will want to do this, but the panel could certainly order both parties to submit letter briefs within five days or ten days with any comments of significance, if any, of Abatey. But getting back to just what we have to do, counsel for appellant argues there was an abuse of ---- first, he argues there's no discretion. But if we don't accept that, then he argues there was abuse of discretion. So here's my Abatey-related question to you. Putting aside whether we would have to do any remand, and maybe we don't, in light of an issue not being raised, when we review for abuse of discretion, don't we have to take into account a conflict that's disclosed by the record and that we have to follow the standard of Abatey and consider abuse of discretion in light of MetLife's dual role? Now, if this is too short a notice to answer that, you want to cover that in briefing, that's okay with me, but I'm just letting you know what my current feeling is that whether we may not have to remand to the district court to reassess, but it seems to me we clearly have to apply the Abatey standard in assessing abuse of discretion. But, you know, I could be wrong in that, so. Well, let me try to answer that as briefly as possible. First of all, I don't think there's any basis for remanding this to the district court to analyze Abatey, given the Atwood decision and given some of the other arguments I've made earlier today. Whether or not the court today can rule on some of these Abatey-like issues without further briefing, two things. One, I would always prefer additional briefing before the court, because I think it educates the court more than a 20-minute oral argument can, and it helps the court frame the issues prior to oral argument. Second of two points is that this court can look at the record and how the district court ruled on the alleged abuses of discretion outlined by Mr. Fleischman here and rule on Abatey without further briefing and without remand to the district court, and I believe that ruling would be in our favor. I will point to a few of the things that opposing counsel has indicated to you that should consider in an Abatey world without a remand. One of the things he took issue with was the fact that the denial was based on the fact that Dr. Lieberman had indicated that Ms. Volenskaya should be able to undertake a sedentary occupation, notwithstanding what is perceived to be fibromyalgia. And he cited a few cases where claims administrators or doctors have taken that position, but in those cases, the individual or individuals had active jobs. In this instance, Ms. Volenskaya had a sedentary job. It was essentially secretarial, where she sat at a desk all day, answered phones, and gave advice. So the concept that somehow we would go back to the district court to get into an analysis of whether or not her job is sedentary or whether or not Dr. Lieberman was incorrect in saying she could do a sedentary job, her job is sedentary, that issue has been determined already by Judge Conte. The other issue is that MetLife did not consider the purported additional evidence that was submitted by Ms. Volenskaya's counsel, Mr. Fleischman, after the denial. That issue is moot if we look at the evidence submitted by Mr. Fleischman that he apparently believes would change the court's decision. It is in the record – I don't want to take up too much of my time searching for it, but it is simply a letter from Mr. Fleischman which attaches a two-page summary report from Dr. Targoff which provides no further insight into how, if at all, Ms. Volenskaya is unable to do her job as a result of the fibromyalgia she claims that she suffers from. So, yes, Mr. Fleischman believes that there's additional evidence that should have been considered, even if the court or MetLife were to have considered it, it has no impact on this case, given it doesn't assist anyone. And that's at, if I have not identified it for the record, 92 and 93 of the excerpts of record. Let's go back a second on your conflict of interest point that was not raised in the district court. What was your opponent supposed to raise? In other words, MetLife's structural conflict was apparent. So what was necessary for your opponent to raise in the district court for us to now reach it under, after abating? Well, I think even prior to abating, when an insurer, when a company was both the insurer of a plan and also the administrator of any portion of the plan, there is a natural conflict within there as well. So even in the pre-abating world, when the defendant was in that role as both insurer and administrator, there are items that the court and the parties can look at, at saying, given that dual role, which is perceived to be a conflict on its face, are there any acts within the administrative record that show that they are abusing that dual role? And oftentimes we see instances where they provide no information whatsoever to the claimant about how to fulfill a claim, or they don't have doctors involved that have anything to do with the claim. There is oftentimes discovery taken where a claims handler, an individual claims handler, is asked if he or she receives a bonus or something of that nature as a result of denying claims. So even in the pre-abating world, there are plenty of items and evidence that a plaintiff could point to, to say, given the dual role of both insurer and administrator, it has discretion by engaging in various specific acts. And some plaintiffs can simply point to the administrative record as seeing, and can take out examples from the administrative record as I've identified for the court. Some plaintiffs seek to take discovery to get more information about those items. And when they do, they can provide a fuller record. That was available to all parties prior to abating. And I come back to the decision in the Wallace case, and as far as I know, it's an unpublished decision, but this abating world is kind of quickly developing, and I think it's right on point. And the court, the district court in the Wallace case established exactly that. If you wanted to get into these issues that have been articulated in abating, they were as, if not more important in a pre-abating world, and you had every right to go into those. And by failing to do so here, again, you don't get a second bite at the apple. Another item that opposing counsel has brought up as something that perhaps this court, or if it were to remand the district court, could consider in this post-abating world is this issue that supposedly the defendants have said there was no mental testing as to the fibromyalgia. Two points on that. First of all, Dr. Kilburn, who was the independent physician consultant retained by MetLife to analyze the psychological component of the claim, in her IPC report, she was the one who identified that perhaps mental testing could be undertaken, and that was with respect to the psychological component of the claim. And that's all in our briefing that we have discussed, either in the district court or here. If there's any confusion on that, and either this court or the district court believed that somehow we were saying that psychological testing should have been done with respect to the fibromyalgia, that's incorrect. I would point out that the district court was not confused because at footnote 10 of its order, which is in the excerpts of record at page 117, the court specifically took that into consideration. And briefly, the district court states in its footnote, plaintiff argues that because MetLife now suggests several tests and exams which would have augmented plaintiff's claim, MetLife violated ERISA by failing to identify and request these tests specifically. While it is true that ERISA requires that any denial of benefits be accompanied by written notice describing additional materials necessary to perfect a claim, and there's a cite, we hold that MetLife satisfied this obligation by informing plaintiff in two separate letters that objective evidence was required. So the point that I'm making is even the issues that opposing counsel has brought up to this court and argued that this court therefore could rule in plaintiff's favor in a post-debatey world without a remand and without supplemental briefing, I think have been addressed and have been specifically rejected by the district court. So a remand wouldn't help the district court and this court would be in no position to take an opposing position on that. This court seems more interested in abatey issues than anything else. I only have a few minutes. I don't have anything else to add unless the court would like to ask other abatey related questions or questions other than abatey. Do any of the panel members have any additional questions? No. Thank you for your argument. Thank you very much. Defense counsel claims that since the Atwood issue wasn't raised below the abatey matter can't be, issues can't be raised now. And that's clearly wrong. I mean, the whole ballpark, the whole field, the rules of the game changed with abatey and abatey is the way we have to decide these issues now. Atwood is gone. That was a different rule. But under Atwood, the same evidence that establishes arbitrary and capricious decision-making goes to show that the conflict of interest is a substantial interference to the decision, the exercise of discretion. And when the plaintiff put in evidence or argued evidence that there was an abuse of discretion, and I've already laid out that evidence, in effect, I was talking about the same evidence that under Atwood would show that the conflict of interest actually interfered with the decision-making process. So it's the same evidence. The rules changed. Now we're out of Atwood and we're into abatey. And to say that under the new rules, the plaintiff can't argue it is almost to deprive him or her of due process. You've got a new law, but you should have known about it. How was anybody supposed to know about it? Minimally, if the Court does not agree with me that there was an abuse of discretion, regardless of conflict of interest, minimally, there has to be a reexamination of this case under the abatey principles. And I think this Court would be a good place to do it because it would tell the lower courts, how do we do this abatey balancing thing? I'm a little confused, as is Justice Gould, about the sliding scale business. But I think this Court could give a lot of guidance to a lot of district courts on how to apply abatey if this Court were to decide this case using abatey principles. So when it comes to met-life, that's the subject of Pennsylvania court and getting past some of the, and I apologize, some of the bumps and trips and factors. With regard to counsel's argument that when the met-life finding that the plaintiff can perform a sedentary job, equals the same as met-life making the finding that she can perform her own occupation or that Dr. Lieberman's finding that she could perform a sedentary job means she could perform her own occupation. That is entirely wrong. The Palmer decision from Oregon, I think it's cited in my briefs, said that sedentary is just a general name applied to many occupations, all of which have different requirements, and you have to look at the specific occupation that's in question. And my client's occupation was not just sitting at a desk and answering phones. She was sitting at a desk answering phones from people calling in with computer problems, and she was a troubleshooter for these computer problems, and she had to be technically smart and skilled and had to be able to duplicate the problems that these people were having on their computer, on her own computer. And so it wasn't just a matter of sitting and answering phones. She was a special kind of engineer, and that Sabato case, I think it's called, from Northern California, deals exactly with this situation, and so does the Kalish case that I cited. I think it's from the Seventh District, Seventh Circuit. Saying that a person could perform a sedentary job is not the same as finding that the person could perform their own occupation. And to rely on that sedentary ability to deny benefits under a known occupation test is arbitrary and capricious. My point with regard to the mental testing was that the psychiatrist, the psychiatrist hired by MetLife said there should be some mental testing. But that was as far as the psychiatric claim goes. That psychiatric claim, that didn't exist by the time we got to court. She was disabled by fibromyalgia. Everybody agreed that there was no depression. There was no psychological cause for disability. It was all the fibromyalgia, and the experts on fibromyalgia are the rheumatologists, and there were two of them. One was Dr. Lieberman from MetLife, and one was my client's rheumatologist, and neither one of them mentioned any type of mental examination. This is purely a creation, as far as fibromyalgia goes, this is purely a creation of MetLife's attorneys, and then to rely on her not taking the mental exam test, when nobody ever told her that she should do it. If MetLife thought she should do it, they should have told her.  That's an abuse of discretion. I think that's it, unless there's any questions. All right. If there don't appear to be any further questions, then this matter will now stand submitted. Thank you both for your argument in this matter. The final case on calendar is Lorraine Nestor Osborne v. Albertson, Inc., 04-17512. That matter is submitted on the braves as of this date. The court is now in recess until tomorrow morning at 930. Thank you.
judges: T.G. Nelson, Gould, Callahan